UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CR. NO. 04-10135GAO |
| ) | |
| THOMAS SCOLA ) | |

**MOTION FOR A JURY TRIAL
ON THE ISSUES OF QUANTITY OF DRUGS AND PRIOR CONVICTIONS**

Now comes the defendant, Thomas Scola, and requests that this Honorable Court grant him an evidentiary hearing at sentencing concerning the issue of sentencing manipulation.

In support thereof, the defendant states that:

The defendant does not agree with the amount of drugs as proffered by the US Attorney. At his change of plea, Mr. Scola plead guilty to all aspects of the indictment, except for the weight of the drugs. Mr. Scola challenges the weight based on sentencing manipulation by the agents pursuant to USSG 2D1.4 .

While the circumstances in this case are not a "reverse sting", the weight charged to the defendant is a product of sentencing manipulation. See, United States v. Montoya, 62 F 3d 1, 5 (1st Cir. 1995) (departures may be warranted in analogous situations). "Where drug sentences are driven primarily by the type and quantity of drugs, the potential exists for the government, not the court, to effectively dictate the defendant's ultimate sentence. Law enforcement agents are in a position to decide when (i.e., after

1

how many drug transactions) to arrest the defendant. The agents, therefore, can fix the amount of drugs, and even the kind of drugs, that will be attributed to [him]. United States v. Lora, 129 F. Supp 2d. 77, 89 (D. Mass. 2001).

At the probable cause and detention hearing on April 12, 2004, Agent Steven C. Story, D.E.A. testified that he knew that after the first four purchases, he would not be able to meet the defendant's source of supply or proceed further up the chain of supply. He testified that he made nine more purchases of relative small amounts in order to increase the quantities to be purchased. He stopped the purchases after he had reached 106 grams, 100 grams being the operative amount for a mandatory sentence. The agent acknowledged that he knew that an amount of 100 grams called for a mandatory minimum sentence.

The defendant seeks to exclude the amount of drugs purchased by the agent after January 27, 2004, which would place the amount at 27.2 grams. See, United States v. Connell, 960 F. 2d 191, 196 (1st Cir. 1992) ("We are confident that, should a sufficiently egregious case appear, the sentencing court has ample power to deal with the situation either by excluding the tainted transaction from the computation of relevant conduct or by departing from the GSR." ); United States v. Montoya, 62 F 3rd 1, 4-5 (1st Cir. 1995) ("Quite possibly - - we need not definitely decide the point - - a district court may order a discretionary downward departure from the guideline range on something less than extraordinary misconduct. "); United States v. Lenfesty, 923 F 2d 1293, 1300 (8th Cir. 1991) (government conduct designed to unfairly manipulate a defendant's sentence length may be grounds for downward departure).

While the defendant's predisposition may be considered in evaluating the government's conduct, all undercover operations, by their very nature are designed to "tempt the criminally inclined, and a well constructed sting is often sculpted to test the limits of the target's criminal inclinations." United States v. Egemoyne, 62 F 3d 425, 427 (1st Cir. 1995). The agents were well aware of the defendant's drug addiction and acknowledged at the detention hearing that he was drug sick and at times incoherent. His addiction to heroin dominated the transactions in this case and colors his predisposition to commit the crimes in question. He never had the heroin "fronted" to him or on hand for the undercover agent to purchase. Rather, all transactions required the defendant to contact Nivar with the exact amount requested, meet Nivar, receive the drugs, meet the agent, exchange the drugs for money and return to Nivar for the money, where he was given heroin for his own use. The defendant's own supplier could not trust him with even a small amount of heroin, given the degree of the defendant's addiction . As long as the agent was seeking heroin from the defendant, the defendant was able to meet his own addiction. See, United States v. Staufer, 38 F 3d 1103 (9th Cir. 1994) ("[T]he Sentencing Commission now expressly recognizes that law enforcement agents should not be allowed to structure sting operations in such a way as to maximize the sentences imposed on defendants, and that courts may take into consideration the predisposition and capacity of the defendant to engage in a deal of the magnitude for which he or she was convicted.")

With the defendant responsible for a weight less than 100 grams, the maximum sentence available under 21 USC 841 is 20 years. There is also no mandatory minimum sentence.

If the career offender enhancement applies to the defendant with less than 100 grams of heroin, the offense level under USSG 4B1.1 is 32 less 3 points for acceptance of responsibility, leaving the defendant with an offense level of 29 and a Criminal History Category of VI, resulting in a guideline sentence of 151-188 months. As will be reviewed later in this objection, the defendant would argue that the career offender provision overstates his criminal history and request that the Court either depart on those grounds or consider the guidelines in their advisory role as one factor to determine the appropriate sentence. See, United States v. Jiminez-Beltre, 440 f 3d 514 (1st Cir. 2006).

Counsel pursued a line of inquiry concerning the agent's involvement in extending the purchase of drugs from the defendant until a particular weight and thus sentence, was reached. She was cut off from further inquiry by the nature of the hearing at the time. Where there is a contested fact which can result in a different amount of drugs attributable to a defendant, an evidentiary hearing should be held. The Guidelines comment to § 6A1.3 states, "An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues." See, United States v. Jiminez Martinez, 83 F. 3d 488 (1st Cir. 1996); United States v. Roberts, 124 F 3d 502 (10th Cir. 1993) (Given the defendants' objections to the quantity of drugs sold, the uncertainty of the evidence and the large sentences the defendants received, a remand for an evidentiary hearing is required).

REQUEST FOR JURY TRIAL

Given the length of sentence the defendant is facing, his refusal to agree to the amount of drugs at the plea colloquy and an evidentiary hearing on the amount of drugs.

4

The state of the law after <u>Apprendi v. New Jersey</u>, 530 US 466 (2000) when combined with <u>Booker v. United States</u>, 543 U.S. 20 (2005) has made it exceedingly difficult to determine the appropriate procedures under the United States Constitution. The First Circuit has decided that drug quantities are not elements of the crime to be proven beyond a reasonable doubt, but sentencing enhancements to be proven by the government by a preponderance of the evidence. <u>United States v. Aitoro</u>, 446 F. 3d 246 (2006). The First Circuit based this decision on a prior, pre-Booker Decision, <u>United States v. Goodine</u>, 326 F. 3d 26 (1st Cir. 2003). This, however, does not resolve the issue in this case, as <u>Aitoro</u> was sentenced before <u>Booker</u> was decided. The Court noted in <u>Aitoro</u> that the defendant's sentence was not imposed subject to a mandatory minimum and because the defendant received a sentence in excess of the applicable mandatory minimum, the Court declined to review the issue.

Here, the defendant faces first a mandatory minimum of five years if the weight of the drugs is over 100 grams and a maximum of four years. If the enhancement under 21 USC 851 is applied, the defendant faces a mandatory minimum of ten years and a maximum sentence of life. If the Career Offender provision of the guidelines is strictly applied the defendant faces an offense level of 34/CHC VI or 262 to 327 months.

If the drugs weigh less than 100 grams, the defendant faces no mandatory minimum and the sentence is a maximum of 20 years under 21 USC 841 and a maximum of 30 years if the enhancement under 21 USC 851 is applied. If the Career Offender provision of the guidelines is strictly applied, the defendant faces an offense level of 31/CHC CI or 188-235 months.

Unlike the defendants in Aitoro or Goodine, the defendant does face an increased sentence on the front end of the term of years as well as the end amount, based solely on the amount of drugs in question. The defendant urges the Court to adopt the procedure and reasoning suggested by Judge Young in United States v. Kandirakis, 2006 WL2147610 (D. Mass. 2006) which makes eminent sense given the continued confusion post-Booker and the changes that have taken place on the Supereme Court since the First Circuit ruled in Goodine. See, United States v. Kandirakis, ___ F.2d at 32 ("Finally, given Remedial Booker's slim majority and the new composition of the Supreme Court, the state of the law in this area is uncertain and in flux. See, Footnote 68; "Indeed, Justice Ginsburg, who provided the crucial fifth vote for Remedial Booker, recently penned a dissent in Washington v. Recuenco, 126 S. Ct. 2546 (2006), 2554-57, arguing that it was structural error(not harmless error) for the jury not to decide sentencing factors – the very remedy Remedial Booker precluded. Moreover, Chief justice Roberts and Justice Alito did not sign a concurring opinion by Justice Kennedy which expressed thinly veiled disapproval of Apprendi and Blakely though following it as Supreme Court precedent.") The defendant seeks to, at a minimum preserve his rights to a jury trial under the 6th Amendment, on what he perceives an element, not a sentencing factor and to request that such an element be decided by proof beyond a reasonable doubt, under the 5th Amendment. See, United States v. Booker, 543 U.S. 220, 319, n6 Thomas Dissent ("The 5th Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.").[1]

---

[1] Judge Gertner in United States v. Malouf, 377 F. Supp. 2d 315 (2005) determined that the defendant's plea, reserving the issue of the weight of the drugs, required a jury waived trial with the amount proven

The defendant is aware that <u>Almendarez-Torres</u> remains the law of this Circuit and that any enhancement required by a prior conviction need not be proven to a jury beyond a reasonable doubt. The defendant seeks to preserve his objection to this view, given the concurring opinion filed by Justice Thomas in <u>United States v. Shepard</u>, 544 U.S. 13, 27-28 (2005) in which he states:

> *Almendarez-Torres,* like *Taylor,* has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided. See 523 U.S., at 248-249, 118 S.Ct. 1219*28 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); *Apprendi, supra,* at 520-521, 120 S.Ct. 2348 (THOMAS, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres* ' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torres,* despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." *Harris v. United States,* 536 U.S. 545, 581-582, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (THOMAS, J., dissenting).

See, also, <u>United States v. Rangel-Reyes</u>, 126 S.Ct. 2873 (2006) where Justice Stevens, in denying a petition for certiorari stated that he continued to believe that Almendarez-Torres was wrongly decided.

Thomas Scola
By His Attorneys

CARNEY & BASSIL


/s/ Janice Bassil
Janice Bassil
B.B.O. # 033100
CARNEY & BASSIL
20 Park Plaza

---

beyond a reasonable doubt.

7

Boston, Ma. 02116
(617) 338-5566

September 5, 2006