```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
        v.                         )    Crim. No. 04-10135
                                   )
THOMAS SCOLA                       )
_____)
```

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by its attorneys, United States Attorney Michael J. Sullivan, and Assistant U. S. Attorney David G. Tobin, hereby files a sentencing memorandum in the above-referenced case for the use of the Court in determining an appropriate sentence for Thomas Scola ("Scola").

### Procedural History

On April 8, 2004, Scola was arrested pursuant to a warrant issued by United States Magistrate Judge Marianne B. Bowler. Scola appeared before the Court on the same day and was temporarily detained. On April 12, 2004, Scola agreed to voluntary detention. On April 29, 2004, a federal grand jury in Boston, Massachusetts returned a multi-count indictment charging Scola in Count One with conspiracy to possess with intent to distribute, and to distribute, heroin in violation of 21 U.S.C. § 846; and in Counts Two through Fourteen with possession with intent to distribute, and distribution of heroin in violation of 21 U.S.C. 841(a)(1), and aiding and abetting in violation of 18 U.S.C. § 2. Frederico Nivar and Jill Doucette also were charged

in the indictment. On March 29, 2006, the United States filed an information pursuant to 21 U.S.C. § 851 providing notice that on or about October 11, 1989 Scola was convicted in the Salem District Court of knowingly or intentionally possessing with intent to manufacture, distribute or dispense a Class B controlled substance (to wit: LSD) in violation of Mass. Gen. L. 94C, § 32A. On May 17, 2006, Scola pleaded guilty to all counts of the indictment in which he was named. On September 1, 2006, Scola filed a response to the government's information. On September 6, 2006, Scola filed a sentencing memorandum and a motion seeking a jury trial on the issues of drug weight and prior convictions. Scola's sentencing is scheduled for October 12, 2006.

## **Presentence Report**

On September 5, 2006, U.S. Probation released its revised Presentence Report ("PSR") for Scola. U.S. Probation determined that Scola was responsible for 120.47 grams of heroin. Specifically, Scola was held responsible for the heroin he distributed to Drug Enforcement Administration ("DEA") Special Agent ("SA") Dan Genese on thirteen occasions between December 18, 2003 and March 30, 2004, which totaled 105.7 grams. Scola also was held responsible for the 13.7 grams of heroin his co-defendant, Frederico Nivar, discarded in the backseat of a police cruiser. Nivar was arrested with the 13.7 grams of heroin on his way to deliver the heroin to Scola. Lastly, Scola was held

responsible for the 1.2 grams of heroin he distributed to SA Genese on December 10, 2003. That distribution was done in the presence of a confidential source and did not result in a criminal charge. The 120.47 grams of heroin for which Scola was held responsible results in a base offense level ("BOL") of 26. U.S. Probation determined that Scola had 11 criminal history points, which results in a criminal history category ("CHC") of V.

Career Offender

U.S. Probation determined that Scola is a career offender pursuant to U.S.S.G § 4B1.1. Scola's career offender status is based, in part, on his 1995 conviction in Alabama for distribution of a controlled substance (LSD), for which he was sentenced to 13 years of custody, with 10 years to serve and three years suspended; and his 1999 conviction in North Carolina for possession with intent to sell and distribution of heroin, for which he was sentenced to 6 to 8 months incarceration.

As a result of Scola's career offender status, his CHC is VI and his offense level is determined by the statutory maximum for the offense of conviction, which, in this case, is life. Pursuant to U.S.S.G. § 4B1.1(b)(A), Scola's offense level is 37. Scola's offense level is reduced by three levels to 34 because of his timely guilty plea and acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. With a total offense level ("TOL") of 34 and a CHC of VI, Scola's Guideline Sentencing Range ("GSR") is

262 to 327 months.

## Scola's Sentencing Memorandum

<u>Claim of Sentencing Manipulation</u>

Scola asserts in his sentencing memorandum that he should be held responsible for sentencing purposes for 27.2 grams of heroin (as opposed to the 120.47 grams in the PSR).  Specifically, Scola argues that he should be held responsible only for the heroin he distributed on or before January 27, 2004.  Scola argues that his heroin sales after that date were the product of law enforcement sentencing manipulation.

Scola asserts in his sentencing memorandum that "[i]t is clear that the agent's strategy in seeking to meet the source of supply had failed by the fourth undercover buy and he continued to purchase drugs from the defendant until the weight of the drugs exceeded 100 grams by 6 grams."  Sentencing Memorandum at pages 5 & 6.  Scola essentially argues that federal law enforcement agents continued to purchase heroin from him in order to increase the total mount of heroin attributable to him. Scola's argument is without merit.

DEA SA Steven Story testified that the investigative strategy was to be introduced to and deal directly with Scola's heroin supplier - Nivar. SA Story testified: "It was part of the investigative strategy to conduct a long term undercover investigation with the attempt, with the objective of the undercover agent being introduced directly to Nivar after gaining

what we would believe to have been his trust after a series of protracted negotiations in multiple purchases."

Scola's counsel elicited testimony from SA Story that an attempt to deal directly with Nivar on January 27th failed. Scola argues that any additional purchases of heroin from Scola after January 27th were the result of sentencing manipulation and should not be considered by the Court. This argument must fail because the purpose of the heroin buys from Scola after January 27th remained to develop the trust of Scola and Nivar, with the ultimate goal of dealing directly with Nivar. SA Story testified: "After the January 27th date, that remained my investigative strategy and objective to try to meet with the source of supply and negotiate directly with him and increase the quantities to be purchased." It is a common and appropriate investigative strategy to attempt to deal directly with a higher level supplier by developing trust through repetitive deals. The repeated purchases of heroin from Scola were designed to develop the trust of Scola and his supplier - Nivar.

Sentencing manipulation may be found when law enforcement agents have gone "outside the scope of legitimate investigation and engage in extraordinary misconduct that improperly enlarges the scope or scale of the crime." United States v. Villafane-Jimenez, 410 F.3d 74, 87 (1st Cir. 2005). See also United States v. Montoya, 62 F.3d 1, 3 (1st Cir. 1995). The First Circuit has chosen not to create detailed rules regarding what constitutes

undue manipulation.  Id. at 4.  See also United States v. Fontes, 415 F.3d 174, 181 (1st Cir. 2005); United States v. Gibbens, 25 F.3d 28, 31 (1st Cir. 1994).  The primary focus in evaluating an accusation of sentencing factor manipulation should be the government's conduct and motives.  United States v. Brewster, 1 F.3d 51, 55 (1st Cir. 1993) n.5 (explaining that inquiries into sentencing factor manipulation ought to focus more on the government's activity than on the defendant's predisposition). See also Gibbens, 25 F.3d at 31.  For example, courts have theorized that enlarging or prolonging a sting due to racial hostility or personal animus would involve "a plainly improper subjective motive."  United States v. Egemonye, 62 F.3d 425, 428 (1st Cir. 1995).  However, courts have been clear to reserve sentencing factor manipulation claims "only for the extreme and unusual case."  United States v. Woods, 210 F.3d 70, 75 (1st Cir. 2000).  See also Fontes, 415 F.3d at 181 (an FBI agent "basically admitted that [the agents were] trying to get a higher sentence," but the court found the behavior not extreme or outrageous enough to warrant a sentence below the statutory mandatory minimum); Montoya, 62 F.3d at 4 ("we think it is useful now to be very candid in saying that garden variety manipulation claims are largely a waste of time").

That the idea to commit a crime originated with or was encouraged by the government, that the crime was "prolonged beyond the first criminal act," or that it "exceeded in degree or

kind what the defendant had done before" are not in and of themselves sufficient for a showing of sentencing factor manipulation. Id. at 3-4. In fact, agents' motives need not have been of "crystalline purity" for a defendant's claim to be denied provided that the "defendant was otherwise legitimately targeted and the sting objectively reasonable in extent." Fontes, 415 F.3d at 181 (internal citation omitted).

The defendant bears the burden of establishing sentencing factor manipulation by a preponderance of the evidence. Gibbens, 25 F.3d at 32. See also Fontes, 415 F.3d at 180; United States v. Barbour, 393 F.3d 82, 86 (1st Cir. 2004). Scola's claim that he is a victim of sentencing factor manipulation is simply unfounded. The defendant cites Montoya for the proposition that departures may be warranted in situations analogous to the one described in § 2D1.1, Note 14 (reverse sting), but in reality, the defendant's situation is not at all analogous to that of a reverse sting wherein a government agent intentionally set an abnormally low sale price. In the case now before the court, Scola set the price and terms of the sale. While the government offered to buy heroin from Scola, he was ultimately in control of the heroin distributions. Moreover, the government did not seek to increase the quantities of heroin purchased from Scola during each transaction.

Scola's sentencing memorandum cites no example in which a similarly-situated defendant has been found a victim of the

theoretical analogous situation.  Numerous courts have found against defendants in cases factually similar to Scola's.  E.g., United States v. Capelton, 350 F.3d 231, 246 (1st Cir. 2003) (finding no malice or bad faith and insufficient evidence that the government improperly extended the duration of its investigation in an effort to extend his sentence); United States v. Terry, 240 F.3d 65, 71 (1st Cir. 2001) (concluding that the government acted in good faith when it claimed, inter alia, that it extended the duration of its investigation to identify other members in the drug network); United States v. Lacey, 86 F.3d 956, 965 (10th Cir. 1996) (affirming convictions for various drug offenses as "it is not outrageous for the government to induce a defendant to continue criminal activity or even to induce him to expand or extend previous criminal activity").  Nor does Scola meet the very standard outlined in Montoya:

> It is no accident that statements condemning sentencing factor manipulation are usually dicta. A defendant cannot make out a case of undue provocation simply by showing that the idea originated with the government or that the conduct was encouraged by it, or that the crime was prolonged beyond the first criminal act, or exceeded in degree or kind what the defendant had done before.  What the defendant needs in order to require a reduction are elements like these carried to such a degree that the government's conduct must be viewed as "extraordinary misconduct."  Montoya, 62 F.3d at 3-4 (internal citations omitted).

Scola not only fails to prove extraordinary misconduct on the part of the government, but rather fails to document any real misconduct at all.  SA Story testified to legitimate motives for the ongoing transactions with Scola, motives similar to those

previously deemed valid by various courts.  See, e.g., <u>United States v. Lacey</u>, 86 F.3d 956, 965 (10th Cir. 1996) ("Law enforcement officials are often justified in increasing the scope of criminal activity in a sting operation, especially when attempting to ensnare those persons higher up on the distribution ladder who are ultimately responsible for the supply of drugs.").

The First Circuit has never substantiated a claim of sentencing manipulation.  As the case law makes clear, a defendant bears a heavy burden when attempting to show sentencing manipulation.  Scola has failed entirely to prove any extraordinary misconduct as required by sentencing manipulation standards.  As a result, his request that more than 80 grams of heroin be excluded from his sentencing calculations is without merit.

<u>Scola's Motion For A Jury Trial On The Issues Of Quantity Of Drugs And Prior Convictions</u>

The United States opposes Scola's motion for a jury trial on the issues of drug weight and prior convictions.  It is settled law in the First Circuit that drug weight and sentence enhancements based on prior convictions are not elements of an offense and are to be determined during sentencing by the judge employing a preponderance standard.  <u>See</u> <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); <u>United States v. Jimenez-Beltre</u>, 440 F.3d 514, 520 (1st Cir. 2006); <u>United States v. Roberson</u>, 459 F.3d 39, 15, n. 11

(1st Cir. 2006); and United States v. Aitoro, 446 F.3d 246, 257 (1st Cir. 2006).

**Government's Sentencing Recommendation**

The government agrees with U.S. Probation that Scola's GSR is 262 to 327 months [TOL of 34 and a CHC of VI] and that a ten year mandatory minimum applies. If the Court adopts the drug weight recommended by Scola [27.2 grams], Scola's GSR would be 188 to 235 months[1] [TOL of 31 and a CHC of VI], and there would be no applicable mandatory minimum.

The government respectfully recommends that the Court impose a Guideline sentence that includes 262 months confinement, which is the floor of the applicable GSR. The United States recognizes that 262 months confinement is a lengthy sentence and the government does not ask for such a sentence without considerable thought and consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.

18 U.S.C. § 3553(a)(2)(A)

Section 3553(a)(2)(A) requires that a sentence be sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Scola,

---

[1] Pursuant to 21 U.S.C. § 841(b)(1)(C), the statutory maximum sentence for the distribution of 27.2 grams of heroin ordinarily is 20 years; however, because of Scola's previous felony drug conviction, the maximum sentence is increased to 30 years. Pursuant to U.S.S.G. § 4B1.1, with a statutory maximum of 30 years, Scola's offense level would be 34 and his CHC would be VI. With a three level reduction for a timely acceptance of responsibility and guilty plea, Scola's TOL would be 31.

who has a lengthy criminal history and has served numerous sentences of incarceration [including a 10 year committed sentence in Alabama for distributing LSD], has pled guilty to thirteen counts of distributing heroin.  This is an extremely serious offense involving one of the most destructive and addictive illegal drugs.  Scola, with his acknowledged heroin addiction, knows far better that most people the destructive capabilities of heroin.  Heroin destroys lives, families, and communities.  The addiction to heroin often results in property crimes and crimes of violence as addicts seek money to support their habits.

A sentence of 262 months is warranted to reflect the seriousness of Scola's thirteen distributions of heroin, to promote respect for the law, and to provide a just punishment for the offense.  A lesser sentence might accomplish these goals with a defendant who had little or no criminal history.  Scola, however, has at least five convictions for drug-related offenses [including distribution and possession with intent to distribute offenses] and numerous other convictions for offenses that include larceny from a person, assault and battery, knowingly receiving stolen property, breaking and entering in the night with intent to commit a felony, larceny from a building, larceny of property over $250, larceny by check, possession of a firearm without an FID card, and carrying a dangerous weapon.  Scola also has pending cases in the Gloucester and Peabody District Courts.

He is in default in both courts on various charges including distribution of a Class A substance, a school/park zone violation, possession of heroin, conspiracy to violate the drug laws, negligent operation of a motor vehicle, refusal to identify self to police, and operating after license suspension.  The government respectfully submits that the public's confidence in and respect for the law would suffer greatly by the imposition of a sentence of less than 262 months.  The Sentencing Guidelines, like the public, look to the individual characteristics of a defendant to determine a proper sentence.  Scola's abhorent criminal record necessitates the imposition of the high sentence recommended by the Guidelines.

18 U.S.C. 3553(a)(2)(B)

Section 3553(a)(2)(B) requires that the sentence afford adequate deterrence to criminal conduct.  A sentence of 262 months will send a clear warning to other drug dealers or those tempted to begin dealing drugs that the courts will treat drug offenders seriously and that recidivist drug offenders will be held accountable for their repeated violation of the drug laws.  Well publicized tough, but fair, drug sentences will have a deterrent effect and save lives.

18 U.S.C. 3553(a)(2)(C)

Section 3553(a)(2)(C) requires that the sentence serve to protect the public from further crimes of the defendant.  Scola's criminal history dates back to March 1989, when he was eighteen

years old.  Given the breadth of Scola's criminal history, it is highly likely that Scola will re-offend upon his release.  He has had ample opportunity to ponder his life of crime during his numerous periods of incarceration, but has failed to make the changes necessary to live a law abiding life.  Scola's drug addiction does not explain or justify his crimes; rather, his addiction is an aggravating factor that suggests he will continue to re-offend when released.  A sentence of 262 months confinement will protect the public from further crimes committed by Scola.

18 U.S.C. § 3553(a)(2)(D)

Section 3553(a)(2)(D) requires that the sentence provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  The Bureau of Prisons provide inmates with quality medical care, educational and vocational opportunities, and drug and alcohol counseling.

Sentencing Parity

Section (a)(6) requires that a sentence avoid unwarranted sentences disparity among defendants with similar records who have been found guilty of similar conduct.  Scola's co-defendant, Frederico Nivar, had a TOL of 29, a CHC of I, and a GSR of 87 to 108 months.  Nivar was not a career offender.  The Court imposed a Guideline sentence that included 87 months confinement. Scola comes to sentencing in a drastically different posture that Nivar did.  As noted above, Scola's TOL is 34, his CHC is VI, and his

GSR is 262 tp 327 months.  The Court imposed a Guideline sentence on Nivar and it should do likewise with Scola.  Section 994(h) of Title 28 of the United States Code, which expresses the will of Congress, dictates that the Sentencing Commission "specify a sentence to a term of imprisonment at or near the maximum term authorized..." for career offenders.  Scola's statutory maximum term of imprisonment is life.  If the Court sentences on the basis of 27.2 grams of heroin, as recommended by the defense, Scola's statutory maximum is thirty years.  In either case, a sentence of 262 months complies with the will of Congress and shows a degree of leniency to the defendant.

## Conclusion

For the reasons stated in this memorandum, the United States respectfully requests that the Court impose a Guideline sentence on Scola that includes a period of 262 months imprisonment.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>By:  /s/ David G. Tobin
>     DAVID G. TOBIN
>     Assistant U.S. Attorney

Dated: October 4, 2006

CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) .

/s/ David G. Tobin
DAVID G. TOBIN
Assistant United States Attorney

Date: October 4, 2006

Case 1:04-cr-10135-GAO    Document 80    Filed 10/04/2006    Page 16 of 16